**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MONA ARORA,<br><br>Plaintiff,<br><br>v.<br><br>GEICO INSURANCE AGENCY and LIBERTY MUTUAL INSURANCE GROUP,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:26-cv-0271<br><br>Chief Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

Plaintiff Mona Arora ("Arora") brings this civil action against Defendants GEICO Insurance Agency ("Geico") and Liberty Mutual Insurance Group ("Liberty Mutual").

Pending before the Court is Geico's Motion to Dismiss (ECF No. 8). For the following reasons, the motion will be denied.

## I. Procedural History

Arora commenced this action in November 2025 in the Court of Common Pleas of Allegheny County. The Complaint asserts claims of negligence against Geico (Count I) and equitable reformation of contract against Liberty Mutual (Count II). Defendants subsequently removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1.)

Following removal, Liberty Mutual filed an Answer (ECF No. 7),[2] and Geico moved to dismiss the negligence claim against it (ECF No. 8). Geico's motion has now been fully briefed (ECF Nos. 9, 15), and is ready for disposition.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c), the parties voluntarily consented to a United States Magistrate Judge conducting all proceedings in this case. (ECF Nos. 13, 14, 16.) The undersigned therefore has authority to decide dispositive motions and enter final judgment.

[2] Liberty Mutual filed a duplicate copy of its Answer at ECF No. 11.

## II. **Facts Alleged in the Complaint**

In February 2019, Arora purchased and began living in a house located on Duncan Street in Pittsburgh (the "Duncan House"). (ECF No. 1-2 ¶ 8.) She obtained homeowners insurance through Liberty Mutual, with Geico acting as her insurance agent.[3] (*Id.* ¶¶ 10-11.)

In early 2021, Arora moved to New York but retained the Duncan House as a rental property. (*Id.* ¶¶ 13-14.) She alleges to have promptly informed Geico of her move and continued to use Geico as her insurance agent. (*Id.* ¶¶ 15, 18.) Geico updated Arora's automobile insurance information and issued her a new policy in New York but allegedly failed to communicate her change of address to Liberty Mutual. (*Id.* ¶¶ 16-17, 29.) Arora renewed the Liberty Mutual homeowners policy each year, most recently renewing and paying the full $3,743 premium on February 25, 2025.[4] (*Id.* ¶ 19.)

On March 13, 2025, Arora was notified that a leak had caused extensive damage to the basement, first, and second floors of the Duncan House. (*Id.* ¶¶ 20-21.) She reported the damage to Liberty Mutual and submitted a claim. (*Id.* ¶ 22.) Liberty Mutual denied coverage, stating: "Your policy covers damage at your residence premises. As, by your own admission, the property that sustained water damage is not your primary residence, any damages at this home are not covered under your policy." (*Id.* ¶ 24.) As a result, Arora was forced to pay $80,641.22 out of pocket to restore the Duncan House to a habitable condition. (*Id.* ¶¶ 30-31.) Arora subsequently filed this action.

---

[3] A copy of Liberty Mutual Policy No. H3V-281-720982-40, policy period 2/25/2019 to 2/25/2020 is attached to the Complaint. GEICO Insurance Agency, Inc. is listed as the Agent. (ECF No. 1-2 at 17-65.)

[4] A copy of the renewal packet for Policy No. H3V-281-720982-40, policy period 2/25/2025 to 2/25/2026 is attached to the Complaint. (ECF No. 1-2 at 65-75.)

## III. <u>Legal Standard</u>

A complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The court will generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

In assessing the sufficiency of a complaint, a court must therefore: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away any conclusory allegations that are not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*,

696 F.3d 352, 365 (3d Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 US at 679.

## IV. Discussion

Geico argues that Arora's negligence claim is barred by Pennsylvania's gist of the action doctrine. It also argues that Geico did not owe Arora a heightened duty of care. *See* ECF No. 9. Each argument will be addressed in turn.

### A. Gist of the Action Doctrine

Geico first argues that Arora's negligence claim is an impermissible attempt to recast a contract dispute as a tort claim. It therefore contends that the claim is barred by Pennsylvania's gist of the action doctrine.[5] *See* ECF No. 9 at 5-6. Arora responds that the gist of the action doctrine is no longer viable following the Pennsylvania Superior Court's en banc decision in *Swatt v. Nottingham Vill.*, 2025 PA Super 138, 342 A.3d 23, *appeal denied*, 352 A.3d 452 (Pa. 2025). *See* ECF No. 15 at 4-6.

"[T]he gist of the action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005). The doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims . . . [and] precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.* (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).

---

[5] "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). The parties do not dispute that Pennsylvania law applies to Arora's negligence claim.

While the Court acknowledges that *Swatt* rejected the application of the gist of the action doctrine as a mechanism for forcing plaintiffs to elect between otherwise viable contract and tort claims, it does not read it as eliminating the duty-based analysis previously articulated by the Pennsylvania Supreme Court in *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014). In *Bruno*, the Pennsylvania Supreme Court explained that a tort claim may proceed notwithstanding the existence of a contractual relationship where the defendant's alleged conduct violates a broader social duty imposed by the law of torts:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

106 A.3d at 68 (footnotes and citations omitted). Finding that the plaintiffs were not limited to a breach of contract claim, the *Bruno* court held that while the defendant had contractual obligations under its policy, plaintiffs' allegations were not that it failed to perform these duties, but that it acted in a negligent manner during the course of fulfilling these duties by making false assurances and recommendations upon which plaintiffs relied. "Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself." *Id.* at 71.

The *Swatt* court recognized and reaffirmed this same principle:

> Since early common law, plaintiffs could freely elect their remedy and sue in either contract or tort, when the facts supported both forms of action. Today, the Rules of Civil Procedure allow a plaintiff to plead both tort and contract claims in the same lawsuit.
>
> After *Bruno*, Pennsylvania courts must review each claim individually to determine whether the plaintiff has alleged or offered sufficient proof (depending on the stage of the proceedings) that the defendant breached the particular duty (tort or contractual) for each particular claim. If so, the claim proceeds to trial. Courts should keep in mind that there are instances when a single gist of the action (one unlawful act) breaches both a general duty of care, as well as an expressed or implied contractual duty. While double recovery for the same unlawful act is generally prohibited, multiple claims can proceed to trial, if timely filed.

342 A.3d at 52.

Thus, the relevant inquiry remains whether the duty allegedly breached arises from the parties' contract or independently from a duty imposed by law. *See, e.g.*, *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) ("Put simply, consistent with *Bruno* and its predecessors, to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, '[w]hat's this case really about?'") (footnote and citation omitted).

Here, the Complaint alleges that Geico knew that Arora had not lived in the Duncan House since receiving notice of her change of address in 2021. Upon receiving this notice, Geico, acting as Arora's insurance agent, had a duty to notify Liberty Mutual of the same. Geico failed to tell Liberty Mutual, thereby causing Arora to pay thousands of dollars in insurance premiums for a policy that, unbeknownst to her, did not apply to the Duncan House from 2021 to 2025. *See* ECF No. 1-2.

Arora's negligence claim is therefore based on Geico's alleged failure to communicate her change of address to Liberty Mutual after undertaking to act as her insurance agent. That alleged

duty is not derived from the terms of the homeowners insurance policy. The Complaint instead alleges that Geico, as a licensed insurance agent, owed Arora an independent professional duty to exercise the skill and knowledge ordinarily possessed by members of that profession.

As a result, the existence of the Liberty Mutual insurance contract does not, by itself, foreclose Arora's negligence claim.

**B. Geico's Duty of Care**

Geico next argues that it did not owe Arora a heightened duty of care. According to Geico, Arora, a competent adult, engaged in an arm's length transaction for the purchase of homeowners insurance. Any failure on Arora's part to read the terms of the homeowners policy defeats her claim against Geico. *See* ECF No. 9 at 6-8.

As acknowledged by Geico, Pennsylvania law recognizes that an insurance agent must exercise the skill and knowledge ordinarily possessed by members of that profession. *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1138 (Pa. Super. 2003) (finding agent of insurer negligent "in failing to fulfill his duty of obtaining all of the information from Pressley needed to properly advise Travelers. As a licensed insurance agent, Evans was required to exercise the skill and knowledge normally possessed by members of that profession and his failure to do so rendered him liable for any loss of coverage.").

Although an insurance agent generally has no affirmative duty to advise an insured concerning every aspect of available coverage, an agent may be liable for failing to follow the insured's instructions or negligently performing duties the agent has undertaken. *Laventhol & Horwath v. Dependable Ins. Assocs., Inc.*, 579 A.2d 388, 391 (Pa. Super. 1990) ("A plaintiff acquires a cause of action against his broker or agent where the broker neglects to procure

insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault.") (citation modified). *See also Allegrino v. Conway E & S, Inc.*, 2010 WL 3943939, at *8 (W.D. Pa. Oct. 6, 2010).

Accepting the allegations in the Complaint as true, Geico undertook to act as Arora's insurance agent. Arora properly notified Geico of her relocation to New York in 2021. Geico updated Arora's automobile insurance information while allegedly failing to communicate the change to Liberty Mutual. Arora further alleges that she continued to pay premiums in reliance of Geico's handling of her insurance affairs.

Construed in the light most favorable to Arora, these allegations plausibly support an inference that Geico failed to exercise the ordinary professional care required of an insurance agent. Whether Geico was actually responsible for communicating the address change, whether its conduct fell below the applicable standard of care, and whether that conduct caused Arora's loss are questions best addressed on a more developed factual record.

Geico's argument that Arora's failure to read the terms of her policy is fatal to her claim is also unavailing. *See* ECF No. 9 at 7-8. Although the Court acknowledges that an insured generally cannot avoid clear and unambiguous policy provisions merely by asserting that she failed to read the policy, Arora's negligence claim does not seek to impose coverage contrary to the policy's terms through Geico's conduct. Rather, she alleges that Geico's failure to communicate material information prevented her from obtaining an appropriate policy in the first instance.

Accordingly, the Court concludes that Arora has plausibly alleged that Geico, acting as her insurance agent, failed to exercise the ordinary professional care required by Pennsylvania law.

## V. Conclusion

For these reasons, Geico's Motion to Dismiss (ECF No. 8) is denied.

An appropriate order will follow.

Dated: November 25, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE